266 So.2d 286

**Earl GAMBLE**

**v.**

**STATE of Alabama et al.**

**4 Div. 431.**

Supreme Court of Alabama.

Aug. 31, 1972.

Jack W. Smith, Sp. Asst. Atty. Gen., Dothan, for the State.

W. G. Hardwick, Dothan, for C. L. Newton, Jr., and others, owners.

Alto V. Lee, III, Dothan, for appellant.

MERRILL, Justice.

The basic question presented in this appeal is whether the circuit court followed

the proper procedure in handling the claim of appellant Gamble, who was a lessee of property that had been condemned by the State for highway right of way purposes.

One of the complicating factors seemed to be that the State and the owners of the property agreed on the amount of compensation to be paid after an appeal was taken to the circuit court.

The State filed the petition for condemnation in the probate court and appellant Gamble was named as a lessee. No question is raised as to the regularity of the proceeding in probate court and after a final decree of condemnation in that court an appeal to circuit court was taken by the State and a jury trial was demanded.

On October 7, 1971, the State, as condemnor, and C. L. Newton, Jr. and others, who will be hereinafter designated as "the owners," filed a petition in circuit court seeking the approval of an agreement they had made without the consent and approval of appellant Gamble. The pertinent elements of this petition were (1) that the demand for a jury be withdrawn and that the trial court proceed to hear the petition after giving notice to appellant; (2) that the property involved be condemned as prayed for in the application for condemnation, and (3) that the compensation and damages to be paid to the owners, including the interest of the lessee, appellant Gamble, be fixed at $73,650.00.

Prior to the date set for hearing, October 19, appellant objected to the withdrawal of the jury demand, which was overruled; he moved to strike the petition, and the motion was denied, and he then demurred to the petition and his demurrer was overruled. On October 19, he objected to the holding of the hearing, but the court proceeded to hear evidence in support of the petition.

On October 22, an order was entered granting the petition, and particularly ordering: (1) that the demand for jury be withdrawn, (2) that the property (Tract 46) be condemned, (3) that the compensation and damages for the owners, "including the interest of the mortgagee and the lessee, Earl Gamble, shall be the sum of $73,650.00 * * *," (4) that the clerk of the court invest that sum at the best obtainable interest, (5) that "the sum of $73,650.00 is more than sufficient to pay any leasehold interest of the Defendant, Earl Gamble, for his leasehold interest; that the amount of the tenant's leasehold interest should not be determined upon this hearing but should be fixed at a later date by this court after being petitioned and this court specifically reserves the right and will determine any dispute as to the value of the leasehold interests between the property owners and lessee at a later date," and (6) that all costs be taxed against the State and finally, all "other matters and things" were reserved for future rulings of the court.

The lease in question was a ten-year lease from September 1, 1963 to August 31, 1973, providing for $500.00 per month rent for the first two years and $600.00 per month for the last eight years, but the rent was reduced to $521.55 per month from the date of the filing of the petition for condemnation, March 31, 1970, to the date the property was vacated, October 1, 1971.

Lots 5 and 6, leased by Gamble, were adjacent and the south two-thirds of the lots were occupied by a brick warehouse. The remainder of the lots to the north were used for parking. That part of the lots condemned was all of the parking area and approximately ten percent of the warehouse on the north side of the building. Part of the agreement confirmed by the court was that the State would reface and repaint the building on the north side so as to conform with the original construction, and that the plumbing, electrical and sprinkler system will be replaced as needed due to the new wall construction.

The mortgagee was paid in full prior to the hearing in circuit court and that left the lessee, Gamble, the only holder of an interest in Tract 46 other than the owners.

■ The owner of a leasehold interest in property proposed to be condemned is a necessary party in a condemnation proceeding. Tit. 19, § 3, Code 1940; Williams v. Jefferson County, 261 Ala. 76, 72 So.2d 920. Lessee Gamble was a party.

■ On appeal of a condemnation proceeding to circuit court, that court tries the cause de novo both as to the right to condemn and the question of compensation and damages. Calhoun County v. Logan, 262 Ala. 586, 80 So.2d 529.

■ On appeal the right to condemn is determined by the trial court, and the amount of damages is fixed by a jury if one was demanded. Alabama Power Co. v. Thompson, 250 Ala. 7, 32 So.2d 795. Here, the trial court did determine the right to condemn in favor of the State in a hearing of which the lessee had notice, was present and was represented by counsel. The appellant's objections to the court's determination of the right to condemn the property are without merit.

Next we come to the question of the propriety of the agreement between the owners and the State as to the full compensation to be paid.

In Harris v. Mobile Housing Board, 267 Ala. 147, 100 So.2d 719, Mrs. Harris was the owner of seven houses on the tract to be condemned and her fourteen tenants were also named as parties defendant. Some tenants were satisfied with their award made in probate court. Mrs. Harris appealed to circuit court. We said that it was obvious that the amount of the award of damages for one tract cannot be tried piecemeal, part in probate court and part in circuit court, and held that an appeal by one party transfers the entire proceedings to circuit court for a trial de novo, whether the appealing party appealed in the name of all the other parties interested in the tract, as he has a right to do, or in his name only. We also said:

"We think this rule is a salutary one, especially when it is related to those circumstances where one of the interested parties is perfectly satisfied with the award in the probate court and refuses to join in an appeal, while another party is very anxious to have his damages passed on by a jury."

The only difference in *Harris*, supra, and the instant case is that after the appeal to circuit court, the owners and the State agreed on an award and did not care to proceed further. They also agreed that the amount of the award was in excess of the claim of the lessee and there was expert evidence to support that feature of the agreement and none to counter it.

■ We see no reason why such an agreement cannot be made between the condemnor and the owner of the land provided ample protection is afforded the lessee or others holding an interest in the property. We can understand why the circuit court might question such an agreement under a long term lease of fifty or ninety-nine years, but in the case of a short term lease with little time to run, as here, and it being undisputed that the value of the leasehold interest is less than the total amount of damages agreed upon, here $73,650.00, there was no reason why the agreement could not be confirmed by the trial court, thereby avoiding a long trial. Compromises and settlements are encouraged and favored by the courts and will be sustained if fairly made, whether made in or out of court. 15A C.J.S. Compromise and Settlement § 23, p. 222; Steenhuis v. Holland, 217 Ala. 105, 115 So. 2; Western Grain Co. Cases, 264 Ala. 145, 85 So.2d 395.

We think this conclusion is supported by our cases. In State v. Walker, 281 Ala. 182, 200 So.2d 482, this court said:

"We have held that in condemnation proceedings, where no point is raised as to the right to condemn, the question to be determined is the total compensation the condemnor is required to pay for the taking of the property. The apportion-

ment of the award between the fee owner and any lessees, mortgagees or any other persons having interests in the condemned property is a matter of dispute between themselves after the final order of condemnation and the total amount of compensation has been fixed. City of Dothan v. Wilkes, 269 Ala. 444, 114 So.2d 237; Tit. 19, §§ 26–27, Code 1940."

In *Wilkes*, the court quoted the following from 2 Lewis on Eminent Domain (3rd Ed.) § 716, p. 1253, with approval:

"When there are different interests or estates in the property, the proper course is to ascertain the entire compensation as though the property belonged to one person and then apportion this sum among the different parties according to their respective rights. The value of property can not be enhanced by any distribution of the title or estate among different persons or by any contract arrangements among the owners of different interests. Whatever advantage is secured to one interest must be taken from another, and the sum of all the parts cannot exceed the whole."

The court also quoted the following from 4 Nichols, The Law of Eminent Domain, 3d Ed., § 12.36[1] as follows:

"It was formerly looked upon as one of the most firmly established principles of law of eminent domain, and it is still the law in the usual case, that when a tract of land is taken by eminent domain, as the land itself is taken by a paramount title rather than the separate estates of different persons having interests in the land, the compensation awarded is for the land itself, and not for the sum of the different interests therein. The duty of the public to make payment for the property which it has taken is not, it is said, affected by the nature of the title or by the diversity of interests in the property. The public pays what the land is worth, and lets the amount so paid be divided among the various claimants, according to the nature of their respective estates. The rule was expressed in the following language:

" 'No contracts between the owners of different interests in the land can affect the right of the government to take the land for the public use, or oblige it to pay by way of compensation more than the entire value of the land as a whole.' "

And in Harris v. Mobile Housing Board, 267 Ala. 147, 100 So.2d 719, the court said that "[w]hen and if an award is finally made in the circuit court, the distribution or apportionment of the funds among the parties as provided for in Tit. 19, § 26, can be made in circuit court just as well as in probate court."

Title 19, § 26, Code 1940, provides:

"Any one of the owners or parties alleged in the application to own or hold any claim, interest or title in the lands sought to be condemned, may, after the granting of the application, file with the court of probate his claim for his part or division of the award made by the commissioners; and upon the filing of such claim, and upon the payment by the applicant into court of such award, the court shall set down for hearing the claim so filed by such party, and determine the same. Upon such determination, the court shall distribute the funds to each of the parties so entitled thereto in the sum and manner in which the facts disclosed upon the hearing show each of said parties to be so entitled."

This section has been held to be applicable to the circuit court when condemnation proceedings had been removed to that court for trial de novo. And in Williams v. Jefferson County, 261 Ala. 76, 72 So.2d 920, this court in speaking of the distribution under Tit. 19, §§ 26 and 27, said:

"That distribution cannot of course be made until there is a final order of condemnation and the amount of the compensation fixed. It is not within the province of the jury on appeal in the cir-

cuit court to make distribution of the award among the several claimants of the tract. It is there tried de novo including of course the power to make distribution as is authorized in the probate court by sections 26 and 27, Title 19, Code. City of Birmingham v. Hudson, supra, [222 Ala. 332, 132 So. 1.] * * * The distribution by the circuit court must be predicated upon a judgment in that court."

We can understand why counsel for appellant insists that his client, the lessee, is entitled to a jury trial at the same time the matter of compensation and damages is tried between the condemnor and the owner of the land. Present counsel for the lessee are the same as counsel for the lessee, Yongue, in City of Dothan v. Wilkes, 269 Ala. 444, 114 So.2d 237. There, the jury fixed the amount to be awarded the owner, the amount to be awarded the lessee, and the total amount to be awarded. This court pointed out that "the verdict of the jury in so far as it may be said to apportion the award between the lessor, Wilkes, and the lessee, Yongue, is irregular, but the appellant City makes no attack upon the form of the verdict inasmuch as it consented that the jury be instructed to return its verdict in that form." In *Wilkes*, the court also said:

"In Williams v. Jefferson County, 261 Ala. 76, 72 So.2d 920, recognition was given to the rule that where leased property is acquired by eminent domain, owner and lessee both have an interest in the total award in the absence of any agreement to the contrary. See Thompson v. City of Mobile, 240 Ala. 523, 199 So. 862. In Williams v. Jefferson County, supra, it is pointed out that it is not within the province of the jury on appeal to the circuit court to make distribution of the award among the owner and other claimants (Title 19, § 26, Code of Alabama 1940); that the value of the tenant's leasehold interest is to be awarded him by the court when the total award is distributed and is to be deducted from the share of his landlord. In these respects the Williams case was not criticized in Harris v. Mobile Housing Board, 267 Ala. 147, 100 So.2d 719.

"The observations in the Williams case to which we have referred are in accord with the generally recognized rule that where there are several interests or estates in a tract of land taken by eminent domain, the proper method of fixing the value of or damage to each interest or estate is to determine the value of or damage to the interests as a whole and then to apportion the gross award among the several owners according to their respective interests. (Citations omitted)."

We also note that in the recent case of Fairhope Single Tax·Corp. v. Mitchell, 285 Ala. 689, 235 So.2d 829, where the dispute was between the lessor-owner, who claimed all of the award, and the lessee, the circuit court, "without a jury," divided a $25,000.-00 award between the owner and the lessee.

We think the very language of Tit. 19, §§ 26 and 27, and all the language of our cases, is that the issue between the owner and a lessee, or other claimant of an interest in the condemned property, does not arise until the right of the condemnor to take the land and the just compensation therefor has been adjudicated and paid into court. The fact that the lessee was required to be made a party added no new issues as between the condemnor and the owner of the land.

The only proper measure of the amount of compensation to which a lessee is entitled for the condemnation and taking of the unexpired portion of his leasehold interest in real estate owned by another is the difference between the fair and reasonable market value of the unexpired portion of the lease and the amount of rent which would have been due to be paid by the lessee for the unexpired portion of the lease, all to be considered as of the time of the

taking of the leasehold interest. City of Dothan v. Wilkes, 269 Ala. 444, 114 So.2d 237 (Charge No. 1), [4, 5] and authorities there cited.

We summarize some of the reasons why appellant lessee is not entitled to a jury trial.

1. The amount paid into court by the condemnor more than covers his maximum award.

2. His award must come from the award to the owner and his dispute is with the owner, not with the condemnor.

3. His claim to part of the award does not arise until an award for the condemned property is paid into court.

4. The Alabama statutes plainly say that the distribution of the award is made by *the court*, either probate or circuit, depending on whether or not there has been an appeal.

5. There is no provision in our statutes or case law granting a separate jury trial to a lessee in a condemnation proceeding.

As already noted, the trial court stated that, upon petition, the dispute as to the value of the leasehold interest between the owners and lessee would be determined by the court. We think that complies with the statutes.

We are not to be understood as holding that the condemnor, even though the amount of the *agreed* award has been paid into court, is fully released until it has actually been determined in the apportionment hearing that the lessee's interest is, in fact, less than the total award of $73,650.00.

Affirmed.

HEFLIN, C. J., and HARWOOD, MADDOX and SOMERVILLE, JJ., concur.