Edna Walters sued Robert Jerry Faulkner and his son, Jerry Lewis Faulkner, seeking to set aside a deed by which she and her husband, Lloyd Walters, had purported to convey their homeplace to the Faulkners. Mr. Walters had died before the action was filed. Mrs. Walters claimed that a material part of the consideration for the conveyance was a promise by the Faulkners to care for the Walterses during the Walterses' lifetimes, and she sought to void the conveyance under Ala. Code 1975, § 8-9-12, which allows a grantor to void a conveyance that is based upon the consideration of a promise of support. She further claimed that her husband had been mentally incompetent at the time of the conveyance and that with respect to him, therefore, the deed was null and void.
The Faulkners moved to sever these two claims, arguing that Edna Walters lacked standing to litigate the claims of Lloyd Walters. They also counterclaimed, seeking a sale of the property and a division of the proceeds if the trial court did indeed rule that Mrs. Walters lacked standing to assert her husband's rights and upheld the conveyance as to Mr. Walters but voided it as to Mrs. Walters.
Mrs. Walters amended her complaint, seeking to add Clifford Walters, brother of Lloyd Walters and the administrator of his estate, as a plaintiff to represent Lloyd Walters's claim. Edna Walters subsequently died, and Clifford Walters was named the executor of her estate. Clifford Walters moved to be substituted as plaintiff for both Edna and Lloyd Walters; the court granted that motion.
After an ore tenus hearing on the issues, the trial court entered an order, finding that Lloyd Walters was mentally incompetent at the time of the conveyance and setting aside the deed with respect to him. The court further found that a material part of the consideration for the deed was an agreement to support the Walterses, and the court voided the deed with respect to Edna Walters. *Page 229 
Finally, the court found that Jerry Lewis Faulkner had never made any promise to support Edna and Lloyd Walters, that he was a party to the conveyance only as a convenience to his father, Robert Jerry Faulkner, and that he therefore had no interest in the property. The Faulkners appeal.
Where the trial court hears ore tenus evidence, a presumption of correctness exists as to the court's findings on issues of fact. Its factual determinations will not be disturbed unless they are clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence.Gaston v. Ames, 514 So.2d 877 (Ala. 1987).
We first address the Faulkners' arguments concerning the nullification of Edna Walters's conveyance to the Faulkners. Her right to annul the conveyance was grounded in Ala. Code 1975, § 8-9-12, which provides:
 "Any conveyance of realty wherein a material part of the consideration is the agreement of the grantee to support the grantor during life is void at the option of the grantor, except as to bona fide purchasers for value, lienees and mortgagees without notice, if, during the life of the grantor, he takes proceedings to annul such conveyance."
The deed to the Faulkners states that the conveyance was based upon "Ten Dollars and other good and valuable consideration." The deed contains no specific promise to provide support to the Walterses during their lifetimes as consideration for the conveyance; however, parol evidence is admissible to prove that an agreement falls within § 8-9-12, as long as that evidence does not contradict a written statement of the full consideration. Vaughn v. Carter, 488 So.2d 1348
(Ala. 1986). The Faulkners argue that the parol evidence admitted at trial was improper or, in the alternative, that it was insufficient to show that Robert Faulkner ever gave a promise to support the Walterses as consideration for the conveyance.
Robert Faulkner testified at trial that Lloyd and Edna Walters bought this real estate from him for $6000 in 1986, and that he was not related to them. He stated that the only consideration for their reconveyance of their homeplace to him in 1991 was the $10 mentioned in the deed, and he denied ever promising to care for the Walterses in return for the conveyance of their homeplace. He admitted, however, that two days after the conveyance, he gave the following executed document to Lloyd and Edna Walters:
 "I, Robt Faulkner agree to keep up the House at 306 Clark St. and do all repairs if needed to take care of Edna Walters Loyd [sic] Walters as long as they live to there [sic] needs are took care of [sic]. Mow the grass for the Sale of the house. On this day of November the sixth day of 1991.
"s/ Robt Faulkner
 "This agreement is between Loyd [sic] Walters and Edna Walters and Robt Faulkner."
Robert Faulkner testified that he did not give this written promise in return for the conveyance and emphasized that he did not write it down until two days after Edna and Lloyd Walters had deeded their homeplace to him.
Elvinia McGriff, who drove Edna and Lloyd Walters to the office of the Faulkners' attorney for them to execute the deed and who was the Faulkners' own witness, testified on cross-examination that on the day of the conveyance Robert Faulkner told her that he had promised to look after Lloyd and Edna Walters, to keep up their house, to buy groceries and deliver meals to them, and to care for them as best he could. McGriff testified that Edna Walters also told her of this promise.
Edith Morris, a friend of Edna Walters, testified that on the day of the conveyance Edna Walters telephoned her, in tears, and told her that she had conveyed the homeplace to the Faulkners. Morris asked Edna Walters whether she had gotten Robert Faulkner to put a promise of support in writing and advised her to get such a writing. Morris testified that, two days after the conveyance, Mrs. Walters telephoned her to say that she had gotten the written promise from Robert Faulkner.
The Faulkners argue that Morris's testimony was improperly admitted, because Morris had been present in the courtroom *Page 230 
during the testimony of other witnesses. The Faulkners point out that "the rule" was invoked at trial; that is, the general rule under Alabama law that allows sequestration of witnesses from the courtroom while another witness is testifying. Before the proceeding began, the trial court specifically asked Morris if she was there to testify, and Morris replied, "[N]ot that I know of." The Faulkners objected when she was later presented as a witness; the trial court heard arguments from both sides, before determining that Morris could give limited testimony and be subject to cross-examination by the Faulkners.
The general rule is that excluding witnesses upon invocation of "the rule" is a matter largely left to the trial court's discretion, and its decision on the matter will not be disturbed unless it amounts to an abuse of discretion.Christiansen v. Hall, 567 So.2d 1338 (Ala. 1990). We find no such abuse of discretion in allowing Morris to give limited testimony, which was challenged on cross-examination. Even without this testimony, and in view of the ore tenus standard of review, the record supports the trial court's finding that Robert Faulkner gave a promise to provide support to the Walterses as a material part of the consideration for the deed. The trial court thus properly declared Edna Walters's conveyance null and void, pursuant to § 8-9-12.
The next issue is whether the trial court correctly determined that Lloyd Walters was mentally incompetent to convey the property to the Faulkners. The record is replete with evidence that, at the time of the conveyance, Lloyd Walters was suffering from Alzheimer's disease and dementia and that he was not mentally capable of executing a deed. We therefore conclude that the trial court properly declared Lloyd Walters's conveyance null and void.
The judgment is affirmed.
AFFIRMED.
ALMON, SHORES, HOUSTON, and INGRAM, JJ., concur.