Israel J. Brothers and Linda Ruth Brothers ("the condemnees") appeal from a judgment in favor of Charlotte D'Anne Holloway ("the condemnor") in a private right-of-way condemnation action brought pursuant to § 18-3-1 et seq., Ala. Code 1975. The judgment established a 30-foot right-of-way across the condemnees' land between a public road and the condemnor's land and awarded $1,000 less costs to the condemnees in compensation. We affirm in part, reverse in part, and remand with instructions.
This action was originally filed by the condemnor in the Probate Court of Etowah County. After the probate court denied the condemnor's requested relief, she appealed to the circuit court for a trial de novo, pursuant to § 18-1A-286, Ala. Code 1975.[1] The trial court held an initial hearing concerning whether a right-of-way should be declared, receiving oral testimony and written exhibits concerning the legal and physical characteristics of the condemnor's and the condemnees' respective properties. The trial court also conducted a view of the property. After considering the evidence, the trial court entered a judgment finding and concluding as follows:
 "1. That this action is properly brought under the provisions of Section 18-3-1, et. seq., Code of Alabama of 1975.
 "2. That the several tracts of land described in [the] Complaint are owned by the persons alleged to [be] the owners thereof, and that the interest sought to be acquired by the Plaintiff is a right-of-way or easement over, on, and across said tracts of land as described in said Complaint and owned by Defendant[s] for the purpose of ingress of Plaintiff to and from her property. *Page 847 
 "3. That it is necessary that said land be condemned for the purpose and uses as set forth in said Complaint in that Plaintiff's property is enclosed on all sides by lands of others, that she has no reasonably adequate way to her property, that she is unable to get to her land from a public road of highway, and that she can get relief only through this proceeding.
 "4. That the right of way chosen by Plaintiff and described in the Complaint is over a route that has been historically used as a means of access to Plaintiff's property from the nearest public road or highway; is easily visible on inspection of the property and appears as an existing right-of-way; is capable of being presently used with a minimum of improvement; travels across generally flat terrain; could be improved with relatively little expense so that same could be used by conventional vehicles under all weather conditions to [provide] dependable access to Plaintiff's property; and does not unreasonably interfere with [Defendants'] present use of [their] property.
 "5. That only two routes were proposed as possible routes to Plaintiff's property. An alternative route for a right-of-way to Plaintiff's property was proposed by [Defendants] along and/or near the southerly boundary of [Defendants'] property. This route was duly considered by the Court. This alternate route is a closer route than the route chosen by Plaintiff, when both are measured by a direct line from the public road to the Plaintiff's property. The alternate route, however, is across unimproved land covered in standing timber; it is not now capable of being traveled by a conventional vehicle; it is up the side of a steep hill from the public road to Plaintiff's property so as to be difficult to even walk across to get to Plaintiff's property; would not be reasonably capable of being improved so as to provide a roadway for use by conventional vehicles because of the steep slope, but even if trees were cut and a roadway created, it would be prone to erosion and other problems associated with drainage so as to cause same to be not likely to last; even if improved and a road created, because of the steep slope, would not be suitable for safe use by conventional vehicles, particularly in adverse weather conditions; and even if it arguably could be improved for use, the estimates of possible cost for installation and maintenance would require the expenditure of an unreasonably large sum of money. The Court finds that such alternate route is impractical and is not convenient, reasonable access.
 "6. That when all factors are considered, the route chosen by Plaintiff is the most convenient, reasonable, and appropriate route to Plaintiff's property."
The trial court thus provisionally established a 30-foot right-of-way that extends across the condemnees' land from the western boundary of a public road to the eastern border of the condemnor's land, subject to later amendment after completion of a survey of the land at issue, and reserved the assessment of compensation for later resolution.
The trial court subsequently held a second hearing at which compensation for the right-of-way was addressed. Both parties again presented testimony and submitted exhibits. After this hearing, the trial court awarded the condemnees $1,000 in compensation for the taking of the right-of-way, and incorporated a legal description of the right of way into his judgment. The trial court also directed that the $920 cost of a survey of the right-of-way property be allocated equally between the condemnor and the condemnees, and allowed the condemnor to offset the condemnees' portion of this amount ($460) from the compensation to be paid to the condemnees. Upon the condemnor's payment of the net award, the trial court entered a final judgment in the proceedings. The condemnees' subsequent motion under Rule 59, Ala.R.Civ.P., was denied by the trial court, and they appealed.
On appeal, the condemnees challenge three aspects of the trial court's judgment: (1) the route chosen for the right-of-way; (2) the adequacy of the compensation awarded; and (3) the propriety of shifting one-half of the cost of a survey of the condemned property to the condemnees. We note that our standard *Page 848 
of review in condemnation cases is highly deferential. "In condemnation cases, the trial court's judgment is to be affirmed unless the verdict is not supported by competent evidence, is against the preponderance of the evidence, or is palpably wrong and manifestly unjust." Moss v. JeffersonCounty, 674 So.2d 569, 571 (Ala.Civ.App. 1995) (quoting StateHighway Dep't v. Lawford, 611 So.2d 285, 287 (Ala. 1992)).
 I. Location of the right-of-way
The condemnees contest the propriety of granting the right-of-way requested by the condemnor because, they contend, it will inconvenience them and restrict them in the use of their land. They argue that approximately 25 acres of their property are located south of the declared right-of-way, and that they and their cattle will not have free and unrestricted access to the land to the south if the right-of-way is allowed to remain as declared. They cite Romano v. Thrower, 261 Ala. 361, 74 So.2d 235 (1954), for the proposition that the condemnor has no right under § 18-3-1 to choose arbitrarily a right-of-way route that is most convenient to her, but that instead the physical convenience of both landowners should be a material consideration in determining the location of the right-of-way on the burdened parcel.
While we agree with the condemnees' position that their convenience was a material consideration for the trial court, we conclude that it did not neglect this consideration. The trial court's judgment details the considerations it took into account in choosing the right-of-way it declared, and each of the facts influencing its choice of route is supported by evidence ore tenus. We specifically note that the trial court heard evidence that the right-of-way chosen was over relatively flat land that had historically been used in the past as an access road to the landlocked property; moreover, the court below heard testimony that the only other route proposed by the condemnees for the right-of-way (traversing the southern border of their property) would entail much more expense, requiring excavation of the side of the mountain to create a road that would be usable for even a short time. We accord the trial court's conclusion as the trier of fact great weight, Otto v.Gillespie, 572 So.2d 495, 497 (Ala.Civ.App. 1990), and note that the attendant presumption of correctness of its judgment is only strengthened by its decision to view the property. SeeTate v. Loper, 459 So.2d 892, 894 (Ala.Civ.App. 1984). We find no reversible error in the trial court's choice of the route of the right-of-way, and we affirm as to this issue.
 II. Compensation for the right-of-way
The condemnees also challenge as inadequate the trial court's award of $1,000 in compensation for the taking of the right-of-way. We note that the trial court's judgment declared a perpetual right-of-way across a portion of the condemnees' land for the use and benefit of the condemnor, but left the condemnees' fee simple interest in the condemned portion and in the surrounding acreage undisturbed.
In private condemnation actions under § 18-3-1, "the applicant must pay the owner for the value of the land taken and compensation for damage to the land, through which [the] right-of-way is established, resulting from the establishment of [the] . . . right-of-way." Ala. Code 1975, § 18-3-2. This statute, which was first enacted in 1919, codifies the rule of the common law affording "just compensation . . . [which] includes not only the value of the land which may be taken, but the injury resulting to the remaining lands of the proprietor."Jones v. New Orleans S.R.R. Immigration Ass'n, 70 Ala. 227,232 (1881); Weldon v. State, 495 So.2d 1113, 1117
(Ala.Civ.App. 1985), modified on other grounds and aff'd, 495 So.2d 1121
(Ala. 1986). Alabama law makes clear that the "injury" within this formula means the loss of value suffered by the portion of the property not taken in the condemnation proceeding:
 "The rule of compensation in a condemnation proceeding in this State where only a part of a tract is taken is that the owner is entitled to the difference between the value of the entire tract immediately before the taking and the value of the part remaining after the taking, giving effect to any enhancement in value to the part remaining *Page 849 
in case the condemnation was for a public highway."
State v. Creola Inv. Corp., 283 Ala. 562, 564, 219 So.2d 390,391 (1969).
At the hearing on compensation issues, the trial court received testimony from a licensed real estate broker tendered by the condemnor who opined that the fair market value of land in the vicinity of the condemnees' holdings was between $800 and $1,000 per acre, and that the land encompassed within boundaries of the right-of-way declared by the trial court measured approximately .58 acres. In contrast, condemnee Israel Brothers testified that he had purchased 22 acres nearby for $45,000 for his son's use. Thus, the testimony before the trial court would support a finding that the condemnees' land had a fair market value of anywhere between $800 and $2045.45 per acre.
As we have noted, the trial court viewed the property in question. Additionally, there was evidence before it that the property located within the declared right-of-way had previously been used as an access road to the condemnor's property before the condemnees placed a locked gate across the road in 1972. Moreover, there was evidence that the condemnees had placed a fence south of the right-of-way as a retaining barrier to prevent their cattle from entering the wooded portion of their lands located to the south of the fence, and had not used the acreage south of the right-of-way in their livestock operations at any time before this litigation.
The record reveals that condemnee Israel Brothers testified that he would incur various other expenses if the right-of-way were allowed to the condemnor. Generally, these expenses consisted of amounts for work and materials to place fencing around the right-of-way and to build a tubular tunnel underneath the right-of-way to allow the condemnees' cattle access to the land south of the right-of-way, as well as for expenses Brothers contended he would incur in working on a pond adjacent to the right-of-way. The condemnees point to these proposals in contending on appeal that the trial court's award was not "just compensation" (cf. Ala. Const. § 23) for the declaration of the right-of-way. However, this evidence, while admissible as affecting the extent of the depreciation of the value of the condemnees' remaining holdings as a whole, constituted only "circumstance[s] for consideration in connection with all the other circumstances and opinion evidence of value by the witnesses." Morgan County v. Griffith,257 Ala. 401, 403, 59 So.2d 804, 806 (1952). The cost of building and maintaining fences, constructing an underground pipe, and making improvements to a pond "would not be the proper measure of compensation in this proceeding."Commissioners Court of Colbert County v. Street, 116 Ala. 28,36, 22 So. 629, 632 (1897).
Ultimately, the issue of just compensation for the taking of the right-of-way across the condemnees' land and any resultant damage to the value of the condemnees' holdings was for the trial court, the trier of fact in this case. State v. Brennan,595 So.2d 458, 460 (Ala. 1992). The award of compensation for the .58 acre right-of-way amounted to an effective award of $1,724.14 per acre, well above the $800 to $1,000 per acre value noted at trial by the condemnor's real estate broker. Moreover, in light of the totality of the evidence, the trial court was not bound to enter a judgment compensating the condemnees for each of their claimed elements of damage that would supposedly result from the declaration of the right-of-way. See Griffith and Street, supra. We find no error in the trial court's award of compensation.
 III. Shifting of survey cost
Finally, the condemnees challenge that portion of the trial court's judgment which declared them responsible for one-half of the cost of a survey of the right-of-way. We note that while Rule 54(d), Ala.R.Civ.P., allows costs to the prevailing party "unless the court otherwise directs," thus vesting broad discretionary powers in the trial courts as a general rule in this area (see City of Birmingham v. City of Fairfield,396 So.2d 692, 697 (Ala. 1981)), the Rules of Civil Procedure are applicable in cases appealed to circuit court only "to the extent that the practice in such matters is not provided bystatute." Rule 81(a)(32), Ala.R.Civ.P.; accord, Ex parte James,684 So.2d 1315 (Ala. 1996) (holding quo warranto proceedings in *Page 850 
circuit court subject to specific statutes governing such actions).
Section 18-1A-70, Ala. Code 1975, provides that "[t]he procedure for condemnation of property under the power of eminent domain is governed by the Alabama Rules of Civil Procedure except as otherwise provided in this chapter." Section 18-1A-293, Ala. Code 1975, specifically mandates that "[t]he costs of the complaint and proceedings thereunder . . .must be adjudged and assessed against the plaintiff and its surety for costs for which execution may issue." This statute over-rides, in condemnation cases under § 18-3-1 et seq., Ala. Code 1975, the customary discretion vested in the trial judge under the Rules of Civil Procedure to assess costs to either party. We reverse that portion of the trial court's judgment which purports to render the condemnees responsible for payment of one-half of the $920 survey cost, and instruct the trial court on remand to vacate that portion of the judgment allowing the condemnor to offset $460 from the compensation to be paid to the condemnees.
In summary, we reverse the trial court's assessment of one-half of the survey cost against the condemnees. In all other respects, we affirm the judgment of the trial court.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
YATES, MONROE, CRAWLEY, and THOMPSON, JJ., concur.
[1] Although this code section is located within the Alabama Eminent Domain Code, § 18-1A-1 et seq., Ala. Code 1975, private right-of-way acquisition actions employ the same procedures.See § 18-3-3, Ala. Code 1975.